Filed 1/30/24  P. v. Isaac CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ZOELEE ISAAC,<br><br>　　Defendant and Appellant. | B326883<br><br>(Los Angeles County<br>Super. Ct. No. BA099542) |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

　　　　Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is defendant and appellant Zoelee Isaac's second appeal from a postjudgment order denying his petition for resentencing under Penal Code[1] section 1172.6.[2]

In the first of these postjudgment appeals, we affirmed the trial court's order denying defendant's first resentencing petition following an evidentiary hearing. (*People v. Isaac* (Aug. 12, 2021), B305378 [nonpub. opn.] (*Isaac*), rev. denied Oct. 20, 2021.) Defendant subsequently filed a second resentencing petition, which the trial court summarily denied. Defendant now appeals from that ruling. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The 1996 Conviction and Direct Appeal

#### A. *The Murder and Robberies*

"On the morning of July 20, 1994, [Sonja] Key, [Timothy Thomas] Williams, [defendant], and one other man entered Home Bank.[3] They were all armed. Key was wearing a wig. Williams, dressed in what appeared to be a brown United Parcel Service uniform, approached the bank guard Juan Corona. An argument and struggle for Corona's gun ensued. Key walked over to the two men. She began to struggle with Corona. She said, 'Get him off me or I'll pop him.' Key shot Corona in the neck, and he

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  When defendant filed his petition, the relevant resentencing statute was numbered section 1170.95. Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its new numbering.

[3]  At the time, defendant was 22 years old.

2

subsequently bled to death.  Key ordered everyone in the bank to the floor.  [Defendant] and the fourth robber brandished their weapons and demanded money.  They demanded that teller Jumpee Sue Martinez and corporate officer Roy Foster give them money from the teller drawers.  They did so.  The robbers took $2,869 in all from unlocked teller stations and then fled in a stolen hot-wired van.  They abandoned the van and were driven off in a Pontiac.  The van contained wigs and a bucket of soapy water." (*People v. Key* (Aug. 5, 1998, B105415) [nonpub. opn.] (*Key*) [counts 1–3].)

Six days later, "[Francis D.] Flowers, [defendant], Key and Tianay Robinson, . . . all armed, entered the Gilmore Commercial and Savings Bank.  All four were wearing wigs.  As an elderly customer, Doris Ingber, was leaving the bank, Robinson threw her down and pushed her head to the floor.  Then the four robbers announced that it was a holdup and demanded to know where the vault was.  [Defendant] put a gun to the head of security guard Raymond Gomez, then threw him to the floor.  Robinson shot Gomez as he lay on the floor.  Flowers threatened the tellers at gunpoint and filled a grocery bag with $7,580 from the tellers' drawers.  Flowers demanded that teller Esmirna Lozano give him the money from her teller drawer.  She did so.  Flowers later slapped Lozano for saying she had no keys to teller Patsy Beene's drawer.  Flowers and [defendant] pointed their guns at Patsy Beene, who at first refused to open her teller drawer.  She later did so, and Flowers took the cash in the drawer.  Flowers pointed his gun at Moses Aguilar, a teller, and demanded that he give him money.  After Aguilar turned over his cash, Flowers ordered Aguilar to lie down on the floor.

"Either Flowers or [defendant] kicked open the door to the safe deposit area, where bookkeeper Ofelia Hovian was working. The robber held a gun to her head and he and Key demanded that Hovian show them where the money was. Hovian went under a desk, and the man kicked her in the side. Hovian showed the intruders where the safe deposit boxes were. The robbers fled in a hot-wired stolen blue Oldsmobile, which they later abandoned a few miles away. The Oldsmobile contained three white wet trash bags, one of which contained a soaked $1 bill." (*Key*, *supra*, B105415 [counts 4–10].)

One week after the second robbery, "Williams, Robinson, and [defendant] were apprehended in a stolen hot-wired van within 200 feet of a Wells Fargo Bank. [William] Blackwell, Flowers, and Key were apprehended in a red Pontiac. Police, who had been watching defendants' activities, concluded that they were about to rob the bank. Key, Flowers, and Robinson had been wearing wigs when first seen, although they removed them before exiting the vehicles. Robinson, [defendant], Key[,] and Flowers were all wearing heavy makeup. The police found loaded guns, a laundry basket with plastic trash bag liners filled with water, wigs, a pillowcase, and a police scanner and manual in the vehicles. They also found incriminating evidence in Key's apartment, from which the five had exited just before driving to the Wells Fargo Bank, and in [defendant's] residence." (*Key*, *supra*, B105415 [count 13].)

## B. *The 1996 Conviction and Appeal*

In 1996, a jury convicted defendant of first degree murder (§ 187, subd. (a); count 1) with a robbery-murder special circumstance finding (§ 190.2, subd. (a)(17)), robbery (§ 211; counts 2, 4 & 5), assault with a firearm (§ 245, subd. (a)(2);

4

counts 3, 7–10), possession of a firearm by a felon (§ 12022, subd. (a)(1); count 12), and conspiracy to commit robbery (§ 182, subd. (a)(1); count 13).

As to counts 1 through 3, the jury found principal firearm use allegations to be true. (§ 12022, subd. (a)(1).) It also found both principal firearm and personal firearm use allegations to be true as to counts 4, 5, and 7 through 10. (§ 12022.5, subd. (a).) The trial court had earlier "granted [defendant's] motion[] to dismiss personal use allegations [(§ 12022.5, subd. (a))] in counts 1 and 2." (*Key*, *supra*, B105415.)

The trial court sentenced defendant to 22 years eight months in state prison, plus life without the possibility of parole.

On direct appeal, we modified defendant's sentence to strike an enhancement attached to count 3 and affirmed the judgment as modified. (*Key*, *supra*, B105415.)

## II. The First Resentencing Petition and Subsequent Appeal

On January 2, 2019, defendant filed a petition for resentencing. (*Isaac*, *supra*, B305378.) The trial court appointed counsel. (*Ibid.*) After briefing from both parties, the trial court issued an order to show cause and set the matter for an evidentiary hearing pursuant to section 1172.6, subdivision (d). (*Isaac*, *supra*, B305378.) "The parties submitted on their briefs and whatever materials had been submitted by the parties to the trial court." (*Ibid.*)

In February 2020, "[a]fter entertaining oral argument, the trial court denied defendant's section [1172.6] petition." (*Isaac*, *supra*, B305378.) The trial court recited a long list of evidence supporting its conclusion that "defendant was 'a major participant' who acted with 'reckless indifference of life[]'" and "a

5

direct aider and abettor who acted with intent to kill." (*Isaac*, *supra*, B305378.) It noted that "'this was an armed takedown robbery of a bank' [with] . . . [']no effort to minimize violence. They robbed it in the middle of the day. They had to know there was an armed security guard. . . . And, defendant had to have been aware 'of the dangers of robbing a bank during working hours with an armed guard.' [¶] Furthermore, defendant 'was there, and he was present, and he was not outside as the getaway driver. . . . He was there in the bank. He was part of this well-orchestrated and planned robbery.' [¶] The trial court also pointed to the evidence that the robbery was well planned: the robbers stole a car in the morning and then, after they left the bank, 'within a short distance they switch[ed] cars.' 'Not only do they do all those things, but they wear disguises. . . . [T]hey have buckets of water in the van. That's to deal with the dye that might be on the packets of money that they steal. They have wigs on. There are just all kinds of things that show that this [was] highly sophisticated.'" (*Ibid.*)

On appeal, we affirmed, holding that "the trial court's findings that defendant acted either as a direct aider and abettor with intent or a major participant with reckless indifference to human life are supported by substantial evidence." (*Isaac*, *supra*, B305378.) Specifically, we agreed that defendant was an aider and abettor based upon "[r]easonable inferences . . . that Key intended to not just shoot, but kill Corona, and that defendant knew that she intended to do so. Therefore, the trial court's finding that defendant was ineligible for resentencing because he had the intent to kill was proper." (*Isaac*, *supra*, B305378.)

## III.    The Second Resentencing Petition

In July 2022, defendant filed a second resentencing petition under section 1172.6.  The trial court again appointed counsel.

The People opposed, arguing that the second petition should be denied because it "[wa]s duplicative" of a petition that the trial court "already denied . . . in 2020 and the Court of Appeal affirmed[.]"

Defendant filed a response, contending that the enactment of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) was a "significant change in the law" entitling him to a new evidentiary hearing under section 1172.6.  Defendant argued that because the record is "extremely unclear" on the question of "what SPECIFIC evidence the [c]ourt relied upon and what standard the court used in denying defendant's [first] petition[,]" "[t]here is no way to ascertain if the court relied upon evidence that would no longer be permissible under the changes in 1172.6 . . . procedures as they have been amended through Senate Bill 775[.]"

In December 2022, the matter proceeded to a hearing. After hearing argument from both sides, the trial court said that it had "painstakingly [gone] through the facts of this case" when evaluating defendant's first resentencing petition and "made a ruling in which I indicated that . . . defendant . . . was a major participant who acted with reckless indifference to life. . . .  [¶] . . . [A]nd I further stated that there may have been some evidence to support that he aided and abetted the crime with specific intent to kill.  [¶]  [I]n any case, I just don't see a reason to give him a second chance.  He had his opportunity.  He appealed my decision.  He lost that appeal."  The trial court thus

summarily denied defendant's second resentencing petition "based on . . . 'law of the case[.]'"

Defendant timely appealed.

## DISCUSSION

## I.     Background Legal Principles

"Section 1172.6 provides a mechanism whereby people 'who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[ ] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court.' [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 382 (*Arnold*).)

As is relevant here, in order to obtain resentencing relief, the petitioner must allege that (1) an information had been filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule, the natural and probable consequences doctrine, or any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)(1)); (2) the petitioner was convicted of murder (§ 1172.6, subd. (a)(2)); and (3) he could not now be convicted of murder as presently defined. (§ 1172.6, subd. (a)(3)).

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c).) At the evidentiary hearing, the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) If the prosecution cannot meet its burden, the petitioner is entitled to vacatur of the murder conviction and resentencing as set forth in section 1172.6, subdivision (e).

Effective January 1, 2022, section 1172.6 was amended by Senate Bill 775. Among other things, these amendments provide that, at the evidentiary hearing stage, the trial court "may consider evidence previously admitted at any prior hearing[]" except for "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872[,]" which "shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).)

The statute as amended also specifies that the trial court may "'consider the procedural history of the case recited in any prior appellate opinion.' 'The specificity of this provision 'indicates the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing.'" (*Arnold*, *supra*¸ 93 Cal.App.5th at p. 392.)

## II. Standard of Review

When, as here, the trial court denies a section 1172.6 petition at the prima facie stage based on a question of law, our review is de novo. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 981, overruled in part on another ground in *People v. Lewis* (2021) 11 Cal.5th 952, 963.)

### III. Analysis

We conclude that the trial court properly applied the law of the case doctrine to summarily deny defendant's resentencing petition.[4]

### A. *Additional Relevant Law*

The law of the case doctrine provides "'that when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal[s.] [Citation.]'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 374, fn. 6.) "As its name suggests, the doctrine applies only to an appellate court's decision on a question of law[.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246 (*Barragan*).)

"[H]owever, 'the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where . . . the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations.' [Citation.]" (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1186 (*Lee*).)

---

[4] At oral argument, defendant repeatedly argued that collateral estoppel does not bar his second resentencing petition; in his reply brief, defendant conflates the concepts of collateral estoppel and law of the case. Assuming without deciding that he is correct as to collateral estoppel, his argument does not alter our analysis under the distinct law of the case doctrine.

**B.    *Application***

The People argue that our prior opinion in *Isaac*, *supra*, B305378 establishes as the law of the case that sufficient evidence supports the conclusion that defendant is ineligible for resentencing relief under section 1172.6.[5]  We agree.  (*Barragan*, *supra*, 32 Cal.4th at p. 246 ["[B]ecause an appellate court's determination 'that the evidence is []sufficient to justify a finding or a judgment is necessarily a decision upon a question of law[]' . . . [s]uch a determination 'establishe[s] as the law of the case that all the evidence adduced at the previous [proceeding] was []sufficient as a matter of law to establish' the finding or judgment"].)

However, defendant contends that intervening changes in law provide new grounds for him to establish his eligibility for resentencing relief.  To ensure that our application of the law of the case doctrine does not yield an unjust result, consistent with *People v. Farfan* (2021) 71 Cal.App.5th 942, 950, we must determine whether our decision in *Isaac* has been "'altered or clarified'" by the new legal authorities cited by defendant.  (*Lee*, *supra*, 95 Cal.App.5th at p. 1186.)  In so doing, we ask whether these new authorities provide a basis for his second resentencing petition to go forward, not (as defendant often argues) whether the trial court erred at the evidentiary hearing on his first resentencing petition.

---

[5]    In his briefs, defendant attacks the legitimacy of our decision in *Isaac*, suggesting that we improperly conducted a "sufficiency of the evidence analysis" instead of a "prejudice analysis[.]"  But that opinion (and the rulings therein) have long since become final; the California Supreme Court denied defendant's petition for review in October 2021.

11

Defendant identifies three relevant changes in law. <u>First</u>, he cites Senate Bill 775, which clarified that one narrow category of evidence—"hearsay evidence . . . admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872"—is inadmissible in a section 1172.6 evidentiary hearing.[6] But, both before the trial court and on appeal, defendant identifies no evidence (material or otherwise) in the record of conviction that could not now be admitted or considered under section 1172.6 as amended by Senate Bill 775.[7] (See *People v. Davis* (1996) 50 Cal.App.4th 168, 172 ["The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never presumed, and the appealing party must affirmatively demonstrate error on the face of the record"].)

---

[6] Defendant also cites the amended portion of section 1172.6 which provides that the trial court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) He does not argue that this provision affects any evidence in the record of conviction, nor does he explain how it could change our prior decision in *Isaac*.

[7] Similarly, we reject defendant's claim that the other major amendment enacted by Senate Bill 775 (that the trial court cannot rely on factual summaries from prior appellate opinions) impacts our ability to rely on the law of the case as set forth in *Isaac*. Defendant does not argue that removing the factual summary from *Isaac* would alter our prior conclusion that sufficient evidence supports the trial court's order that defendant is ineligible for resentencing relief.

Second, defendant directs our attention to a new line of cases clarifying the preclusive effects of prior jury findings at a section 1172.6 evidentiary hearing.[8]  (See, e.g., *People v. Cooper* (2022) 77 Cal.App.5th 393, 398 ["[A] trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented"]; *Arnold*, *supra*, 93 Cal.App.5th at p. 383 [trial court could not find that defendant was the actual killer in contravention of the jury's prior finding that he did not personally use the murder weapon].)

Theoretically, this line of cases could impact our decision in *Isaac*.  If evidence in the record of conviction directly contravened a prior finding made at defendant's 1996 trial, cases such as *Arnold* would preclude the trial court from relying on that evidence in any hearings held on subsequent petitions.  (See *Arnold*, *supra*, 93 Cal.App.5th at p. 391.)  And as discussed above, a new law that disqualifies material pieces of evidence in the record of conviction could alter our prior ruling about that record's sufficiency.

But again, defendant does not make such claims here.  He argues that the trial court's dismissal of the personal firearm use allegation with respect to the murder charge functions as an acquittal on the finding that defendant personally fired the

---

[8]      By not raising any new laws aside from Senate Bill 775 before the trial court, defendant arguably forfeited his arguments as to other authorities.  However, because defendant asserts that his counsel provided ineffective assistance of counsel by failing to invoke these other authorities, we will address his arguments on appeal.  (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments].)

13

murder weapon. Even if we agreed with that contention, a prior finding that defendant did not personally use a firearm does not preclude the trial court from finding that he is ineligible for resentencing relief as a direct aider and abettor. (Contra, *Arnold, supra*, 93 Cal.App.5th at pp. 390–391 [reversing the denial of a section 1172.6 petition because the trial court's finding that defendant *was the actual killer* contradicted a prior jury finding that he did not personally use the murder weapon].) Indeed, we expressly noted in *Isaac* that the record of conviction contains sufficient evidence to support a finding that defendant directly aided and abetted first-degree murder *regardless* of "whether [he] himself was armed." (*Isaac, supra*, B305378.)

Third, defendant points to a new line of cases emphasizing the need to consider a defendant's youth when assessing his capacity to be recklessly indifferent within the meaning of section 1172.6. (See, e.g., *People v. Jones* (2022) 86 Cal.App.5th 1076, 1093 ["[I]t is best for the trial court to have a meaningful opportunity to consider [a defendant's] youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life"].)

But, *Isaac* affirmed that defendant is ineligible for resentencing relief as a direct aider and abettor, and we have rejected all of defendant's arguments targeting that finding. Therefore, it is irrelevant whether defendant could now be found ineligible on the alternate ground that he was a major participant who acted with reckless indifference to human life.[9]

---

[9]     It follows that we do not reach defendant's claims that he received ineffective assistance of counsel in connection with this argument.

14

## DISPOSITION

The trial court's order denying defendant's second section 1172.6 resentencing petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT